IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| JASON R. RICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:13-CV-06115-NKL |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Jason Rice seeks review of the Administrative Law Judge's decision denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* [Doc. 8]. Rice's alleged disability onset date is January 25, 2011. For the following reasons, the decision of the Administrative Law Judge (ALJ) is REVERSED, and the case is remanded for the purpose of awarding benefits to Rice.

**I.    Background**

Rice has a long history of depression that manifests itself through aggressive thoughts and behaviors. He was incarcerated in 1998, 1999, and 2001 for assault and drug charges. From 1998 through 2011, a fourteen year period, Rice had fifteen employers. [TR-149-153]. He told his therapist that he lost many of these jobs due to his behavior and by threatening his bosses. [TR-312]. On January 25, 2011, Rice reported to

1

the emergency room because he was hearing voices. He was admitted to the hospital where he later made suicidal and homicidal statements, was combative, and made verbal threats toward staff and officers. [TR-228-29]. The hospital physician assessed a GAF score of 20. Rice was discharged two weeks later, on February 8, 2011, with diagnoses of bipolar disorder, manic, severe with psychotic features and a GAF score of 60. [TR-233]. His mood and anxiety had improved on medication.

Medical reports after February 2011 reveal that Rice experienced inconsistent results with his medication. In April 2011, he reported that he was "doing great" [TR-289] and on May 3, 2011, his symptoms had improved and he "rarely" heard voices. [TR-272]. On May 27, 2011, he reported hearing voices more often in the past few weeks, and they encouraged him to harm others. [TR-271]. He reported relative stability throughout the summer of 2011. In October 2011, he reported that he was attempting to hold down a job, but that his boss was unsatisfied with his pace. [TR-267]. In December 2011, he reported "starting fights." [TR-265-66]. In February 2012, he discussed his attempts to control his anger, but revealed that he loses control when he is angry. [TR-310]. He also expressed enjoying the smell of blood. [TR-311]. In 2012, he separated from his wife and daughter and began living in a homeless facility provided by the Salvation Army.

Beginning in February 2011, Rice sought regular treatment from Dr. Patricia Hogan, D.O. In April 2012, after treating Rice at least eleven times, Dr. Hogan evaluated Rice through a "Mental Impairment Questionnaire." [TR-274]. She opined that Rice suffered from post-traumatic stress disorder, mood disorder, and psychoses. Rice's

2

current GAF score was 40 and his highest GAF score in the past year was 40. She opined that he suffered from mood disturbance, delusions, hostility, difficulty thinking and concentrating, paranoia, social withdrawal, suicidal ideation or attempts, and anxiety. It was her opinion that Rice had marked limitations in social functioning, concentration, persistence or pace, and repeated episodes of decompensation. His symptoms would interfere with the attention and concentration needed to perform simple work tasks 34-66 percent of the day. During the time Dr. Hogan treated Rice, she adjusted or changed his medications six times. [TR-238, 266, 268, 270-72].

In July 2012, Dr. Hogan completed a Medical Source Statement.[1] [TR-315-16]. She opined that he was markedly limited in his ability to: sustain an ordinary routine without special supervision, make simple work related decisions, and interact appropriately with the general public and with coworkers. He was extremely limited in his ability to: maintain attention and concentration, perform activities within a schedule, work in coordination or proximity to others, complete a normal workday without interruption from psychologically based symptoms, perform at a consistent pace, and accept instructions or criticism from supervisors.

In January 2012, Rice began treatment with Dr. Susan Shuman. Dr. Shuman treated Rice eight times before providing a Medical Source Statement in July 2012.[2] [TR-317-18]. Dr. Shuman opined that Rice was moderately limited in his ability to:

---

[1] The Medical Source Statement from Dr. Hogan was only provided to the Appeals Council and not to the ALJ, but because it was presented to the Appeals Council, it is considered evidence in the record to be considered in determining disability.

[2] The Medical Source Statement from Dr. Shuman was only provided to the Appeals Council and not to the ALJ, but because it was presented to the Appeals Council, it is considered evidence in the record to be considered in determining disability.

maintain attention and concentration and perform activities within a schedule. He was markedly limited in his ability to: work in coordination with or proximity to others, complete a normal workday without interruption from psychologically based symptoms, perform at a consistent pace, and interact with the public. He was extremely limited in his ability to: accept instructions or criticism from supervisors and get along with coworkers.

A non-examining, state agency consultant also provided an evaluation of Rice. In a Psychiatric Review Technique form, filled out in May 2011, Dr. Geoffrey Sutton provided a prospective opinion. [TR-250-60]. He used Rice's progress from January 2011 to May 2011 to opine that from January 2011 to January 2012, Rice would have only mild to moderate restrictions in social functioning, activities of daily living, and maintaining concentration, persistence, and pace, and would therefore not meet the requirement of a disabling impairment lasting longer than twelve months. Dr. Sutton relied on Rice's response to medication while in the hospital in January and February 2011 and his GAF score of 60 upon discharge in February 2011 to form his conclusions. [TR-259].

After a hearing, the ALJ issued an unfavorable decision, finding that Rice could perform jobs that exist in significant numbers in the national economy. [TR-21-22]. Rice had the residual functioning capacity (RFC) to perform a full range of work at all exertional levels. However, Rice could never climb ropes, ladders, and scaffolds. He must avoid concentrated exposure to unprotected heights and hazardous machinery. He is limited to the performance of unskilled work only with no more than occasional

contact with the public and co-workers. He should not perform high-production rate jobs, but low and medium rate production jobs can be performed. [TR-18].

To reach the RFC determination, the ALJ gave the non-examining state agency consultant's prospective opinion "significant weight." [TR- 19]. Dr. Hogan's April 2012 evaluation and opinions were given "little weight" because there was no proof from her notes that Rice required case management, a sheltered environment, group home placement, or long-term institutionalization. Rice had responded well with medication and did not require inpatient care beyond his January 2011 hospitalization. [TR-20]. Dr. Hogan's and Dr. Shuman's July 2012 evaluations were not in the record at the time the ALJ issued his decision and were therefore not considered by the ALJ.

## II. Discussion

### A. Weight Give to Dr. Hogan's Medical Opinion

Rice argues the ALJ erred by failing to give Dr. Hogan's opinions controlling weight. The Court agrees. "A treating physician's opinion is given 'controlling weight' if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). An ALJ may disregard or discount a treating physician's opinion where other medical assessments are supported by better or more thorough medical evidence or where the treating physician renders inconsistent opinions. *Id.* In any case, the ALJ must provide good reasons for the weight given to a treating source's opinion. 20 C.F.R. § 416.927(c)(2); *see also Brown v. Astrue*, 611 F.3d 941, 951-52 (8th Cir. 2010). "The opinion of a consulting physician who examines a claimant once or not

5

at all does not generally constitute substantial evidence." *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998); *see also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). This "is especially true when the consultative physician is the only examining doctor to contradict the treating physician," *Cox v. Barnhart*, 345 F.3d 606, 610 (8th Cir. 2003), or where the claimant suffers from a psychological disorder, as "one characteristic of mental illness is the presence of occasional symptom-free periods," *Brown*, 611 F.3d at 954.

Dr. Hogan, who examined and treated Rice multiple times over a period of several months, is Rice's treating physician. Absent a good reason, her opinion should have been given controlling weight. The ALJ concluded that Dr. Hogan's opinions were entitled "little weight" because there was no indication within her treatment records that Rice needed to be institutionalized, required case management, or needed to live in a sheltered environment. The ALJ also pointed to evidence that Rice responded well to medication. This reasoning is unsupported by substantial evidence in the record. First, there is no requirement that a claimant be institutionalized or live in a group home to be considered disabled. Further, it appears from Dr. Hogan's notes that Rice did have a case worker. [TR-264, 272]. Second, while Rice did respond to medication at times, the ALJ omitted the fact that Rice's medication had been changed or adjusted by Dr. Hogan at least six times, suggesting that his condition was not stabilized by medication.

Moreover, Dr. Hogan's opinions are largely consistent with the opinions of Rice's treating therapist, Dr. Shuman. Both doctors opined that Rice would be markedly limited in his ability to complete a normal workday and interact with the general public and coworkers. They also agreed he would be extremely limited in his ability to accept

6

instruction or criticism from a supervisor. The only opinion that was contrary to Dr. Hogan's and Dr. Shuman's opinions was that of a non-examining state agency consultant who reviewed Rice's progress from January to May 2011 and provided a prospective assessment. The consultant's prospective assessment is not consistent with substantial evidence in the record and is inconsistent with the opinions of both Rice's treating physicians. Dr. Hogan's opinion was due great weight, and the ALJ erred by giving "little weight" to her opinion while giving "significant weight" to the consultant's opinion.

### B. RFC Determination

The Commissioner argues that even if the ALJ erred in failing to give controlling weight to Dr. Hogan's opinions, the vocational expert testified that there would still be jobs available if his RFC was limited to no contact with coworkers or the public, as Dr. Hogan opined. However, this argument does not address the fact that the RFC contained no limitation for interactions with supervisors despite Dr. Hogan's and Dr. Shuman's opinions that Rice would be extremely limited in his ability to interact with a supervisor. Further, the vocational expert testified that frequently negative interactions with a supervisor would not be tolerated in the workplace. [TR-57-58].

The ALJ relied on the fact that while living at the Salvation Army shelter, Rice lived with fourteen other men. However, even the ALJ acknowledged that he kept to himself and only talked with one person. Further, the ALJ omitted that he lived at the shelter because he was unable to get along with his wife. The Commissioner also points to Rice's work history as evidence that he has been able to work with long-term mental

7

impairments and points to the fact that there is no evidence he ever sought non-social jobs. However, his work history, which shows he had fifteen employers in fourteen years, suggests both a willingness to work and an inability to do so. The evidence shows that while he constantly attempted to work, he was never able to hold down a job for very long. While it is true that in an Adult Function Report Rice circled "No" to a question about whether he had ever been fired because of problems with getting along with others, the same function report states that he does not get along very well with authority figures and "can't stand being around others." [TR-198-99]. Further, Rice testified at his hearing and told his therapist that he struggled to get along with supervisors and relayed specific examples of encounters. The ALJ and Commissioner also point to the fact that Rice can go grocery shopping and interact with the cashier without getting into a confrontation, but interacting with a cashier can hardly be compared to the stress of working eight hours a day, five days a week.

Rice's ability to interact with coworkers and supervisors aside, the RFC also fails to account for both Dr. Hogan's and Dr. Shuman's opinion that Rice's psychological symptoms would markedly affect his ability to complete a normal workday. The vocational expert testified that anything over one day of work missed per month would be unacceptable. [TR-56]. She also testified that no jobs would be available for an employee who would have deficits in attention and concentration that totaled two and a half hours or more in an eight hour day. *Id.*

The ALJ erred by failing to give controlling weight to Dr. Hogan's opinion. Both Dr. Hogan's and Dr. Shuman's opinions, along with substantial evidence in the record,

8

support a finding that Rice was disabled beginning January 25, 2011. Rice's medical history, testimony, and work history support a finding that he is significantly limited in his ability to work with others, including authority figures, and that his mental impairment markedly affects his ability to complete a normal workday. Accordingly, the ALJ's decision is reversed and the case is remanded with instruction to award benefits.

III. Conclusion

For the reasons set forth above, the ALJ's decision is REVERSED, and the case is remanded for the purpose of awarding benefits to Rice.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: June 23, 2014
Jefferson City, Missouri

9